STATE OF MISSISSIPPI, et al. *v.* JOHNSON.

No. 41250 February 29, 1960 118 So. 2d 308

212

*James E. Brown,* Jackson, for appellant.

214

*Watkins & Eager,* Jackson, for appellee.

ETHRIDGE, J.

The Mississippi Income Tax Act permits gains from certain types of installment sales to be returned on a deferred basis, authorizing the spreading of the income tax over the period of the installment payments. Miss. Code 1942, Sec. 9220-08(a). The taxpayer, Walter G. Johnson, Jr., appellee, received ten installment promissory notes representing part of the purchase price from him of certain shares of stock. He exercised his option

under the statute to pay the Mississippi income tax on gains received in the years in which the deferred payments were received by him. Subsequently, he transferred these notes in a bona fide transaction to a merchandising corporation in which he owned the majority of stock, for the principal purpose of enabling the endorsee to use the notes as collateral in its business. In return, and as consideration for the transfer, he received substantially identical notes of the corporation payable to him in installments. The question is whether under Code Sec. 9220-08(a) the sale by taxpayer of these installment obligations, and the receipt by him as payment therefor of similar installment notes executed to him by the transferee, terminated the statutory privilege of paying his income tax on the installment payments when received; or whether taxpayer may continue to report his taxable gain under the new installment notes on the deferred payment basis. We conclude that the taxpayer retains that privilege.

The statute defines gross income as including gains and income from sales, and income derived from any source whatever. Sec. 9220-08(a) then states: "The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer; provided, when property is sold upon what is known as the installment or deferred payment plan, and the initial payment is thirty per cent (30%) or less, (and the initial payment shall include the total sum paid, including assumption of mortgage or other indebtedness, during the taxable period in which such sale occurs) the net income realized may be included for taxation in that portion of any installment payment representing gain or profit in the year in which such payment is received."

## I.

The case involves an additional assessment for 1955 Mississippi income taxes.

On August 7, 1954 appellee Johnson sold to Mississippi Publishers Corporation 350 shares of stock in that corporation for a total consideration of $962,500. The purchaser paid him $250,000 in cash, and gave notes for the balance of $712,500, the notes being payable annually over a ten-year period, at $71,250 a year, at five per cent interest. The State Tax Commission, appellant, admits this was a valid installment payment sale under the above statute. There is no dispute between appellee and the Commission as to the amount of profits from the sale. Johnson paid the 1954 income tax due on the profit of $205,189.50 realized from the cash received by him in 1954 of $250,000.

On January 17, 1955 appellee organized a corporation known as Giles, Inc. Its principal purpose was to own, carry on and conduct a clothing, department or other type of store for the purpose of sale at retail of merchandise and articles of various types. It is undisputed, and the chancery court found, that this corporation was not organized with any tax purposes in mind, and without any thought by appellee at that time of selling the notes of Mississippi Publishers Corporation, owned by him, to Giles, Inc.; and that Giles, Inc. was organized for a bona fide purpose of establishing a high quality retail mercantile establishment in the City of Jackson.

On January 28, 1955, Johnson established an irrevocable trust for his children, with his wife as trustee, placing $48,000 in the trust. At the organizational meeting of Giles, Inc., Johnson purchased 52 per cent of the stock for a cash payment of $52,000, and Mrs. Johnson, as trustee, purchased 48 per cent of the stock by investing $48,000 of the trust funds.

Johnson made a detailed study of the need in Jackson of an additional department store. He discussed his plans with merchants in several cities of the nation, and with his attorneys, local merchants and bankers. In order to open the store in the early fall of 1955, work

was begun on renovating a building on Capitol Street. It was later found that the old structure was insufficient for the purposes, so it was demolished and work began on a new four story building. The anticipated cost of the building, the store's equipment and operating expenses gradually began to increase considerably. The amount of cash which Giles, Inc. needed was not available. In order for Giles to secure the necessary financing, it had to have a better financial statement. Johnson concluded that this could be done only by a transfer to Giles, Inc. of the liquid and well-established notes of Mississippi Publisher Corporation. Giles could then use them as security for loans, and they would buttress its financial statement.

For these reasons, on February 15, 1955, Johnson transferred to Giles, Inc. the ten installment notes of Mississippi Publishers Corporation, for their face amount of $712,500. The consideration for the transfer was ten notes of Giles, Inc., executed by Johnson as President thereof, payable to Johnson individually, in identical amounts of those of the Mississippi Publishers Corporation and payable on the same dates. Hence there was no profit or taxable gain from this transaction, nor was there any loss from it. This was an outright sale and transfer of Mississippi Publishers notes by Johnson to Giles, Inc. Johnson retained no individual rights in them. The consideration paid him was the ten installment notes of Giles, Inc. payable to him. A certified public accountant testified for appellee that it is usual and customary in business for stockholders in a corporation to sell valuable property to it for a long-term consideration. This gives the corporation the necessary credit with which to operate its business and meet its obligations. He said that in his opinion ths transfer of the Mississippi Publishers notes to Giles, Inc. greatly increased its financial responsibility and enabled it to operate in the money market as an established business.

However, between February 15 and April 7, 1955, there was a change in the financial condition of Giles, Inc. During this period it was discovered that the old building was not suitable for renovation, and it was going to cost approximately $600,000 to build and equip a new building; that Giles, Inc. needed about $1,000,000 for construction of the building and operating capital. Upon advice of counsel, bankers and accountants, inquiry was made of Mississippi Publishers Corporation as to whether it would be interested in prepaying the notes. Mississippi Publishers accepted this offer, and paid the full face amount of the notes to Giles, Inc. Johnson individually received none of this money. It was used by Giles, Inc. in financing construction of the building, securing inventory, and preparing for opening of the store. When Giles, Inc. opened, it had actual physical assets of approximately $1,000,000, not including the value of its eighteen-year lease.

The tax year involved is 1955. In that year Giles, Inc. paid appellee $85,000 on its indebtedness to him under the installment notes. Appellee considered this a receipt attributable to and including profits from his sale of stock, so in his 1955 income tax return he reported this $85,000 from Giles, Inc. as a portion of the profits of his sale of stock to Mississippi Publishers Corporation. He paid income tax on the part constituting realized net income from the sale. However, the commissioner of the income tax division, State Tax Commission, made an additional assessment against Johnson for 1955 taxes. He decided that the disposition by Johnson of the Mississippi Publishers notes to Giles, Inc. terminated the deferred payment privilege under the statute; that the statute refers to the sale of tangible personal property rather than intangible; and that the transaction with Giles, Inc. was not an arms-length deal.

The full Commission affirmed this additional assessment for 1955 of the full amount of the profits on the

sale of the stock to Mississippi Publishers Corporation, the assessed remainder being $584,790.50. In other words, the Commission took the position that upon the disposition by sale of these installment obligations, there was a termination of the installment contract privilege, and the remaining taxable gain, resulting from the initial sale, must be reported in the year in which the installment obligations are sold. This resulted in an additional 1955 tax of $34,152.85, plus interest. Johnson appealed to the chancery court. Code Sec. 9220-31. After a hearing at which Johnson and a certified public accountant testified, the chancery court reversed the order of the State Tax Commission and vacated the additional assessment for the year 1955. It found that the transfer of the Mississippi Publishers notes to Giles, Inc. was for the purpose of giving financial stature to the transferee and to assist it in financing its obligations. Giles, Inc. was organized as a legitimate business venture. There is no prohibition in the tax statute of a subsequent sale of installment notes. The second sale, from Johnson to Giles, Inc., was a bona fide transaction, and payment of income tax can continue to be made on an installment sale basis when the profits are actually received.

## II.

The quoted part of Code Sec. 9220-08(a) was incorporated in the Mississippi Income Tax Act in 1948. Miss. Laws 1948, Ch. 464, Sec. 1. It is modeled substantially upon Sec. 453, subsections (a) and (b) of 26 U. S. C. A., the Federal Income Tax Act. However, the federal act contains a provision that, if an installment obligation is sold, the gain results at the time of the sale. 26 U. S. C. A. Sec. 453(d); 47 C. J. S., Internal Revenue, Sec. 187; 27 Am. Jur., Income Taxes, Sec. 200; 2 Mertens, Law of Federal Income Taxation (Rev. Ed. 1955), Secs. 15.26-15.29; Anno., 156 A. L. R. 1242 (1945). The Mississippi Income Tax Act contains no provision similar

to Sec. 453(d), 26 U. S. C. A., pertaining to a gain or loss on disposition of installment obligations.

██ ■ In construing the Mississippi statute, we must interpret the terms of Sec. 9220-08(a). It applies where property is sold upon the deferred payment plan, and the initial payment is 30 per cent or less. Both of those conditions exist here. Moreover, the negotiable notes of Mississippi Publishers Corporation were choses in action or property which could be "sold." Miss. Code Secs. 692, 690. The word "property" in the statute is not limited to tangible property.

██ ■ Following the terms of Sec. 9220-08(a), and with these conditions of the deferred payment option existing, the statute provides that "the net income realized may be included for taxation in that portion of any installment payment representing gain or profit in the year in which such payment is received." Giles, Inc. paid Johnson for the Mississippi Publishers notes with its own installment notes. He received no realized profit for 1955 except the gain resulting from the payment of $85,000 made to him that year by Giles, Inc. on its installment notes. He reported and paid the income tax on that profit for that year. The statute authorizes him to include any gain he received "in the year in which such payment is received." He did not receive any other gain in 1955 on the installment notes. The literal terms of the statute manifestly apply to this situation. Under the installment option, the tax is not imposed upon anticipated profits, but upon payments actually received, upon realized profits.

Appellee had the right to sell the Mississippi Publishers notes on the installment plan, and under the statute there were no payments received by him on the stock sale until and as payments were made for the Giles notes by Giles, Inc.

██ ■ Appellants contend that upon the disposition by sale of the Mississippi Publishers notes to Giles,

Inc., there was a termination of the installment contract and the remaining taxable gain from the initial sale of stock must be reported in that year. It is argued that the installment sale section presupposes a continuation of the initial installment contract. There is no statement in the statute to that effect, and no terminology warranting that inference. █ The deferred payment option continues, where there is a bona fide sale of installment obligations, until the taxpayer realizes a gain. Although the initial installment notes of Mississippi Publishers Corporation were sold by Johnson to Giles, Inc., he received in return installment notes in the same amount.

Appellants assert it is not necessary for the Mississippi act to contain a specific provision dealing with disposition of installment obligations, in order to find a taxable gain in the year of disposition. We cannot agree.

 It is a well-established rule that a taxing statute must be strictly construed against the taxing power and in favor of the taxpayer, and all doubts as to whether or not a tax has been imposed must be resolved in favor of the taxpayer. Town of Utica v. State of Miss., 166 Miss. 565, 148 So. 635 (1933); Gulley v. Jackson International Co., 165 Miss. 103, 145 So. 905 (1933); Conrad Furniture Co. v. Miss. State Tax Commission, 160 Miss. 185, 133 So. 652 (1931); Pan Am Petroleum Corp. v. Miller, 154 Miss. 565, 122 So. 393 (1929); State v. Union Tank Car, 151 Miss. 797, 119 So. 310 (1928); Texas Co. v. Wheeless, 185 Miss. 799, 187 So. 880 (1939); Gulf and Ship Island Railroad Co. v. Harrison County, 192 Miss. 114, 4 So. 2d 717 (1941); Independent Linen Service v. Stone, 192 Miss. 832, 6 So. 2d 110 (1942); Chickasaw County v. G. M. & O. Railroad Co., 195 Miss. 754, 15 So. 2d 348 (1943); Virden Lumber Co. v. Stone, 203 Miss. 251, 33 So. 2d 841 (1948); Stone v. Virden Lumber Co., 205 Miss. 841, 39 So. 2d 498 (1949); Stone

v. Nelson Exploration Co., 211 Miss. 199, 51 So. 2d 279 (1951); Stone v. General Box Co., 212 Miss. 60, 53 So. 2d 85 (1951).

 ██ The manifest purpose of the legislature was to tax anticipated profits from an installment sale only when "received." The statute authorizes installment sales without limiting the time within which the installments can be made. Appellants advance the theoretical argument that a "taxable gain" is realized on an installment sale at the time of the transaction, not when and if the installment obligations are satisfied. The undisputed evidence of Morgan, the certified public accountant who testified for appellee, is that the "gain" with reference to the sale of Mississippi Publishers stock to that corporation is not realized until and as the Giles notes are collected. Any number of events could occur after an installment sale to prevent the State from collecting the tax on theoretical paper profits. This is a risk which the State must take under the present act, when it does not impose a tax on profits from installment sales until payment is received, or does not terminate the privilege upon disposition.

Appellants in effect argue that this case should be decided as if the State had a statute similar to subsection (d) of Sec. 453, 26 U. S. C. A. The Federal Government had an installment statute similar to Sec. 9220-08(a) prior to 1928. Because of interpretations of the Board of Tax Appeals and Federal Courts that no gain resulted at the time of the sale of an installment obligation, the Congress enacted in 1928 what is now 26 U. S. C. A., Sec. 453(d), which provides that, if an installment obligation is sold, the gain results at the time of the sale. The Federal amendment was found to be necessary to reach that result. Federal decisions prior thereto make that conclusion manifest. 2 Mertens, Law of Federal Income Taxation, Sec. 15.27. Nevertheless, we cannot, in effect, amend the Mississippi statute by inferring that provision.

In brief, the interpretation of the pre-1928 Federal Act, which was similar to the present Mississippi statute, shows that Federal administrative agencies and courts were reaching an opposite conclusion to that now urged by appellants. The purpose of Sec. 9220-08(a) was to postpone the tax on deferred installments until the taxpayer realized a gain. The additional assessment would frustrate that clear legislative purpose. It would be contrary to the specific terms of the act.

## III.

■■ The only remaining method by which the additional assessment could be sustained would be to hold that the taxpayer's dealings with Giles, Inc. were fraudulent and were based upon a sham or subterfuge. The recited facts demonstrate that this was not the case; that in fact the taxpayer organized the corporation and transferred the Mississippi Publishers notes to it for legitimate business purposes in good faith. The Commission offered no evidence whatever to the contrary. An inference of bad faith would therefore have to be made upon conjecture and speculation, and in the face of clear findings of fact by the chancery court that these transactions were bona fide. Transactions with a closely held corporation should be carefully examined, but, where such transactions are shown to be in good faith and for legitimate business purposes, they are upheld as proper and valid. These circumstances are shown, by the undisputed evidence and by the chancellor's findings of fact, to exist here. We would not be warranted in overturning the facts and the findings of the trial court upon mere conjecture and speculation that the taxpayer was trying to evade the tax.

■■ The taxpayer's sale of the notes and related actions were not a subterfuge or a sham, but legitimate business transactions. There was ample evidence to support the findings of the chancery court to this effect.

Chisholm v. Commissioner, 79 F. 2d 14 (C. A. 2nd, 1935), cert. den., 296 U. S. 641, 56 S. Ct. 174, 80 L. Ed. 456; U. S. v. Bondurant, 245 F. 2d 265, (C. A. 6th, 1957); Sun Properties U. S., 220 F. 2d 171, (C. A. 5th, 1955); Tupelo Garment Co. v. State Tax Commission, 178 Miss. 730, 173 So. 656 (1937); Jones v. Helvering, 71 F. 2d 214 (C. A. D. C., 1934).

In summary, appellee did not receive any of the proceeds of the sale of Mississippi Publishers notes by Giles, Inc. to Mississippi Publishers Corporation. This money went into the accounts of Giles, Inc. Appellee has reported and paid tax on the 1955 installment payment made by Giles, Inc. to him. Under Sec. 9220-08(a) he is liable for income taxes on the gain from this installment sale when and as installment payments are received by him. The record reflects a legitimate business transaction falling clearly within the terms of the statute. The effect of a sale or disposition of installment notes under circumstances constituting a subterfuge, sham or fraud is not an issue in this case. That situation would cast the issues in a different light, and would necessitate the application of different legal principles.

Affirmed.

*McGehee, C. J.,* and *Hall, Holmes,* and *Gillespie, JJ.,* concur.

*Roberds* and *Arrington, JJ.,* took no part.

KYLE, J., dissenting:

I am unable to concur in the majority opinion rendered by the Court. The record shows without any dispute that the appellee sold his 350 shares of stock in the Mississippi Publishers Corporation to the Hedermans during the summer of 1954 for the sum of $962,500; that $250,000 of that amount was paid in cash, and the remaining $712,500 of the purchase price was evidenced by ten promissory notes for the sum of $71,250 each,

which were to mature at the rate of one each year over a period of ten years, with a right reserved to the makers to pay said notes before the maturity dates thereof at any time after July 1, 1956. The notes bore interest from date until paid at the rate of five per cent per annum. The net income realized by the appellee from the sale of the stock amounted to 82.0758 per cent of the purchase price, and that amount was taxable as income under the State Income Tax Law of 1952. Since the cash payment amounted to less than 30 per cent of the purchase price of the stock, the appellee was given the privilege by the terms of the statute to report the capital gain on the amounts received each year as the notes were paid.

The appellee reported the capital gain on the $250,-000 which was paid in cash at the time of the sale in his 1954 income tax return and paid the income tax due on that amount.

In December 1954 Hederman Brothers, who were the owners of the stock of the Mississippi Publishers Corporation, wrote the appellee a letter in which they offered to pay immediately the ten notes which represented the unpaid balance of the purchase price of the 350 shares of stock mentioned above, that offer to remain open for the appellee's acceptance until January 10, 1955. The appellee made no reply to that offer. During the latter part of January the appellee organized the corporation known as Giles, Incorporated, with a capital stock of $100,000. The charter was approved by the Governor on January 17, 1955, and was filed for record in the office of the chancery court clerk on February 5, 1955. The appellee, on January 28, 1955, created a trust by paying over to his wife, as trustee, the sum of $48,000, to be invested by her and held in trust for the benefit of his two children. The money was invested in Giles, Incorporated, and 48 per cent of the stock was issued to the appellee's wife as trustee. The remaining 52 per

cent of the stock was issued to the appellee, who thus became the owner of a controlling interest in the family-owned corporation.

As the work progressed on the renovation or reconstruction of the store building which was to be occupied by Giles, Incorporated, it became necessary for the appellee to make available large sums of money to be used in paying the cost of construction of the new building and in paying for fixtures and a stock of merchandise. The only available resource which the appellee had to look to for raising such large sums of money, so far as the record shows, was the Mississippi Publishers Corporation notes, which the makers only a few weeks before had offered to pay in advance of their maturity. The appellee therefore assigned the notes to the family-owned corporation, of which he was president, and took the notes of the family-owned corporation for the same amounts in exchange, and after contacting the makers of the Mississippi Publishers Corporation notes, or their attorney, presented the notes for payment at the First National Bank of Jackson on April 15, 1955, and the notes were promptly paid in full.

In my opinion, the appellee's receipt of the balance of the purchase price of the 350 shares of stock represented by the above mentioned purchase money notes, constituted a final realization of the capital gain arising out of the sale of the 350 shares of stock, and the appellee was obligated by the terms of the statute to report the same as capital gain for the year 1955; and the fact that the appellee had transferred the notes for the balance of the purchase price of the 350 shares of stock to the family-owned corporation before they were presented for payment and had accepted payment of the notes in his capacity as president of the family-owned corporation, rather than as an individual, had no effect upon the appellee's personal liability for the payment of income tax on the remaining part of the capital gain

realized by him from the sale of the 350 shares of stock.

The statute provides that "the net income realized may be included for taxation in that portion of any installment payment representing gain or profit in the year in which such payment is received." Payment of the purchase money notes given for the 350 shares of Mississippi Publishers Corporation stock was received, according to the appellee's own testimony, when he presented the notes for payment on April 15, 1955. The payment included the balance of the gain or profit realized from the sale of the 350 shares of stock, which had not been included in the appellee's income tax return for 1954, the year in which the sale was made. The appellee had a right to transfer the Mississippi Publishers Corporation notes to the family-owned corporation, if he wished to do so, and to permit the family-owned corporation to receive the proceeds when the notes were paid. But, when the appellee exercised that right, he did not relieve himself from liability for the payment of the tax on the capital gain realized from the sale of the 350 shares of stock, or effect a postponement of that liability until Giles repaid to him the amounts received by Giles when the Mississippi Publishers Corporation notes were paid.

Whether the transfer of the Mississippi Publishers Corporation notes to Giles, Incorporated, represented a sale, as the appellee's attorneys insist, or a mere device to obtain immediate payment of the notes from the makers without having the payment made directly to the appellee, who was liable for the payment of the income tax on the capital gain realized from the sale of the 350 shares of stock, the result, so far as the appellee's tax liability is concerned, was in my opinion the same. When the notes were paid the appellee was under a duty, by the terms of the statute, to report the balance of the capital gain realized from the sale of the

stock as income for the year in which the payment was received, and to pay the tax due thereon. If A makes a loan of $1,000 to B and takes B's note therefor, and the loan is consummated by A assigning to B a rent note signed by C, which B presents for payment a few days later, and the note is paid. A cannot be heard to say that he is not required to include the amount of the rent note in his income tax return for the year in which the note was paid for the reason that the rent was not paid to him but to B, who had given him a note for the same amount which might never be paid.

In Helvering, Commissioner of Internal Revenue, v. Horst, 311 U. S. 112, 61 S. Ct. 144, 85 L. Ed. 75, the Supreme Court held that the dominant purpose of the income tax laws is the taxation of income to those who earn or otherwise create the right to receive it and who enjoy the benefit of it when paid; and that the tax laid by the 1934 Revenue Act upon income "derived from * * * wages, or compensation for personal service, of whatever kind and in whatever form paid * * *; also from interest * * *", could not fairly be interpreted as not applying to income "derived from interest or compensation" when he who is entitled to receive it makes use of his power to dispose of it in procuring satisfactions which he would otherwise procure only by the use of the money when received.

The Court in its opinion in that case said:

"In the ordinary case the taxpayer who acquires the right to receive income is taxed when he receives it, regardless of the time when his right to receive payment accrued. But the rule that income is not taxable until realized has never been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not himself received

payment of it from his obligor. The rule, founded on administrative convenience, is only one of postponement of the tax to the final event of enjoyment of the income, usually the receipt of it by the taxpayer, and not one of exemption from taxation where the enjoyment is consummated by some event other than the taxpayer's personal receipt of money or property. Cf. Aluminum Castings Co. v. Routzahn, 282 U. S. 92, 98. This may occur when he has made such use or disposition of his power to receive or control the income as to procure in its place other satisfactions which are of economic worth.''

The principle, so clearly stated in Helvering v. Horst, supra, has been repeatedly recognized by the courts in federal income tax cases since the decision in that case was rendered. See especially Floyd v. Scofield, C.A. Texas 1952, 193 F. 2d 594; Stockstrom v. C.I.R., C.C.A. 8, 151 F. 2d 353; Johnson v. U. S., C.C.A. Cal. 1943, 135 F. 2d 125; Acer Realty Co. v. C.I.R., C.C.A. 1942, 132 F. 2d 512; Guaranty Trust Co. v. U. S., D. C. Wash. 1942, 44 F. Supp. 417, affirmed 139 F. 2d 69; Davis v. United States, C.C.A. 1955, 226 F. 2d 331; Sanders v. Fox (C. C.A. 1958) 253 F. 2d 855; Paster v. C.I.R. (C.C.A. 1957), 245 F. 2d 381, certiorari denied 78 S. Ct. 139, 355 U. S. 876, 2 L. Ed 2d 108; Finley v. Commissioner of Internal Revenue (C.C.A. 1958), 255 F. 2d 128. In Yiannias v. Commissioner of Internal Revenue (1950) 180 F. 2d 115, the Court said: ''The purpose and intent of the income tax law is taxation to those who earn or otherwise create the right to receive income and a taxpayer may not avoid liability for income tax on his income by assigning the right to receive it.'' In Paster v. Commissioner of Internal Revenue (1958), 245 F. 2d 381, the Court said: ''It is axiomatic that income is taxable to the one who is the source of the income and who has control over its disposition and it is of no consequence for taxation purposes that the one who creates or is responsible for the

income does not receive it but channels it into the hands of another.''

The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. United States v. Isham, 17 Wall. 496, 506; Superior Oil Co. v. Mississippi, 280 U. S. 390, 395-6; Jones v. Helvering, 63 App. D. C. 204, 71 F. 2d 214, 217; Gregory v. Helvering, 293 U. S. 463, 55 S. Ct. 266, 79 L. Ed. 596. But the question for determination here is whether what was done, apart from the tax motive, can be deemed to have relieved the appellee from liability for a deficiency assessment of income tax for the year 1955 on that portion of the $712,500 payment received during the year which represented capital gain—whether the appellee, who has fully enjoyed the benefit of the capital gain realized from the sale of the stock, can escape taxation on the unreported balance of the capital gain on the ground that he had transferred the notes to the family-owned corporation prior to the presentation of the notes for payment, and had taken the notes of the family-owned corporation for the same amount due over a period of one to ten years. The answer to that question, in my opinion, should be an emphatic ''No''. ''It is command of income and its benefits which marks the real owner of property.'' Higgins v. Smith, 308 U. S. 473, 60 S. Ct. 355, 84 L. Ed. 406. As stated by the Court in Ingle Corporation v. United States (1955), 127 F. Supp. 573, ''It is also well settled * * * that for the purpose of the proper administration of the taxing statutes, transactions between close or family corporations and its stockholders are subject to special scrutiny to determine their true purpose and effect; that transitory phases of an arrangement that add nothing of substance to the completed affair should be disregarded for tax purposes, * * *.''

In Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, the Court held that, under the Revenue Act of

1918, which taxed the income of every individual, including "income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid," the income of a husband by way of salary and attorney's fees was taxable to him notwithstanding that by a contract between him and his wife, assumed to be valid in California where they resided, all their earnings including salaries and fees, were to be received, held and owned by both as joint tenants.

In its opinion in that case the Court said:

"A very forcible argument is presented to the effect that the statute seeks to tax only income beneficially received, and that taking the question more technically the salary and fees became the joint property of Earl and his wife on the very first instant on which they were received. * * * But this case is not to be decided by attenuated subtleties. It turns on the import and reasonable construction of the taxing act. There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

In Griffiths v. Commissioner of Internal Revenue, 308 U. S. 355, 60 S. Ct. 277, 84 L. Ed. 319, the Court held that a taxpayer could not escape or postpone the income tax on the profit derived from a sale of his stock by interposing as vendor in the transaction a corporation formed for the purpose and wholly controlled by himself, which, in form, received from him a conveyance of the shares, transferred them to the purchaser, received the

purchaser's money and agreed to pay it over to the taxpayer in annual instalments.

In its opinion in that case the Court said:

"We cannot too often reiterate that 'taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid.' Corliss v. Bowers, 281 U. S. 376, 378. And it makes no difference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. Cf. Gregory v. Helvering, 293 U. S. 465. * * * Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed, particularly in the provisions of a tax law like those governing installment sales in sec. 44 of the Revenue Act of 1932. Taxes cannot be escaped 'by anticipatory arrangements and contracts however skillfully devised * * * by which the fruits are attributed to a different tree from that on which they grew.' Lucas v. Earl, 281 U. S. 111, 115."

The appellee in this case, in my opinion, should not be heard to say, that it is true that the Mississippi Publishers Corporation notes were paid in full on April 15, 1955, but the $712,500 was not paid to me personally, it was paid to me as president of Giles, Incorporated, on my order; and the state must wait for its taxes until Giles, Incorporated, pays its notes to me. The appellee was neither relieved of liability for the payment of the tax on the capital gain realized from the sale of the 350 shares of stock when he transferred the notes to Giles, nor was his liability for the payment of the tax made conditional upon his receipt of payment of the Giles notes. There is, in my opinion, nothing in the statute

which lends color to the appellee's claim that the state must wait for its taxes until Giles pays its notes to the appellee. Those notes may never be paid.

But even if the Mississippi Publishers Corporation notes had not been paid during the year 1955, the appellee, in my opinion, would have been liable for a deficiency assessment of income tax for the year 1955 on the balance of the capital gain realized from the sale of the 350 shares of stock, for the reason that he had disposed of the notes during that year, and by doing so had terminated the installment payment privilege which he had elected to make use of when the sale of the stock was consummated. If the transfer of the notes to Giles, Incorporated, for the purpose of enabling Giles to obtain money and credit, constituted a sale of the notes to Giles, as the appellee contends, the transfer of the notes by the appellee individually to the family-owned corporation and the acceptance of new notes of the family-owned corporation marked the last step to be taken by which the appellee obtained the fruits of the capital gain which had accrued on the sale of the 350 shares of stock; and the appellee then became liable for the payment of the balance of the tax measured by the then value of the obligations. It is not claimed that the Giles notes, at the time they were accepted by the appellee, were worth less than their face value.

Special reference is made in the majority opinion to the fact that the chancellor found that the appellee had been guilty of no fraud, but had acted in good faith, when he transferred the Mississippi Publishers Corporation notes to the family-owned corporation. But the state is not required to prove fraud to justify an additional assessment of income tax, and good faith does not relieve a taxpayer from liability for the payment of a deficiency assessment. To sustain the additional assessment in this case, it was not necessary that the state prove that the transfer of the Mississippi Publishers

Corporation notes to the family-owned corporation was accomplished for a fraudulent purpose; and it was not necessary that the state prove that the appellee acted in bad faith in failing to report the balance of the capital gain realized from the sale of the 350 shares of stock in his 1955 income tax return.

The chancellor in my opinion should have entered a decree approving the additional assessment of income tax made by the Chairman of the State Tax Commission.

*Lee, J.* concurs.