# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-SA-00441-SCT

*MISSISSIPPI DEPARTMENT OF REVENUE*

*v.*

*EKB, INC., SCOTT BURTON AND EMILY BURTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/25/2021 |
| TRIAL JUDGE: | HON. LAWRENCE LEE LITTLE |
| TRIAL COURT ATTORNEYS: | HARRIS H. BARNES III |
| | JAMES WILLIAMS JANOUSH |
| | MORTON WARD SMITH |
| | JUSTIN PERRY WARREN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JUSTIN PERRY WARREN |
| | BRIDGETTE TRENETTE THOMAS |
| | MORTON WARD SMITH |
| ATTORNEYS FOR APPELLEES: | HARRIS H. BARNES III |
| | JAMES WILLIAMS JANOUSH |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 10/06/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Following a 2020 audit, the Mississippi Department of Revenue (MDOR) issued a

$65,957 sales tax assessment against EKB, Inc., a wedding photography business owned and

operated by Scott Burton.[1]  The problem with this is that sales tax applies only to the sale of

---

[1] Emily Burton is Scott's wife.

"*tangible* personal property."  Miss. Code Ann. § 27-65-17(1)(a) (Rev. 2017) (emphasis added).  And EKB does not sell tangible personal property.

¶2.     EKB provides Burton's photography *services* and sells the copyrights to the *digital* still images he creates.  Neither activity is subject to sales tax.

¶3.     First, photography is not a taxable business activity.  *See* Miss. Code Ann. § 27-65-23 (Rev. 2017).  Film development and photo finishing, however, are taxable business activities. *Id.*  But as an exclusively digital photographer, Burton does not even use film, let alone develop film or engage in photo finishing—i.e., the process of developing and printing photographs from negatives.

¶4.     Second, still digital images are not taxable digital products.  In addition to the sale of tangible personal property, the sale of "specified digital products" is subject to a 7 percent tax. Miss. Code Ann. § 27-65-26(1) (Rev. 2017); Miss. Code Ann. § 27-67-3(e) (Rev. 2017). But still digital images do not fall under the definition of specified digital products.  Miss. Code Ann. § 27-65-26(3)(a)-(c) (Rev. 2017).

¶5.     Because EKB did not engage in taxable sales, this Court affirms the chancery court's order vacating the MDOR's sales tax assessment.

**Background Facts & Procedural History**

**I.      Burton's Business**

¶6.     To engage Burton's wedding photography services, clients contracted for one of EKB's packages.  These packages ranged from $2,500 to $11,000.  Every package included the transfer of digital images via a DVD or flash drive.  In almost all packages, the client

2

purchased the copyrights to the images Burton created. Additional package options included an engagement photo session and a slide show of images played at the wedding reception. Higher-end packages also included linen prints and/or a coffee-table book of the wedding photos. As far as Burton could recall, only two clients had ever purchased the most expensive package, which included an iPad onto which digital images were downloaded.

¶7. To purchase a package, clients would enter into a contract and pay a deposit. The balance was then due before the wedding. After the wedding, Burton would use his computer to adjust and crop the images. He then uploaded the images to a jump drive or DVD and sent them to the client. If the client's package included a coffee-table book, the client would select the images for the book, and Burton would engage a third-party print service to construct the book. According to Burton, EKB paid the sales tax on the DVDs, flash drives, coffee-table books, iPads, and digital frames when he purchased them for his clients.

## II. MDOR's Audit

¶8. In 2016, the MDOR audited EKB and Scott and Emily Burton. Following the audit, the MDOR issued a sales tax assessment of $65,957 for the tax period of January 1, 2012, to January 31, 2014.

¶9. EKB appealed to the Board of Review, which affirmed the sales tax assessment. EKB then further appealed to the Mississippi Board of Tax Appeals, which, following a hearing, also affirmed. Specifically, the Board of Tax Appeals found EKB was in the business of

3

selling tangible personal property and thus was subject to sales tax under Section 27-65-17.

### III. EKB's Appeal

¶10. EKB appealed the sales tax assessment to the Lafayette County Chancery Court. After a bench trial, the court vacated the sales tax assessment. Specifically, the chancellor concluded that capturing and selling digital images was neither the sale of tangible personal property under Section 27-65-17 nor a listed taxable business activity under Section 27-65-23. The chancellor further found EKB's use of DVDs, flash drives, and digital tablets did not amount to the sale of tangible personal property. Thus, the chancellor ruled, the MDOR exceeded its statutory authority when it assessed EKB sales tax.

¶11. The MDOR then appealed to this Court.

### Standard of Review

¶12. Recently, "[i]n *King v. Mississippi Military Department*, this Court abandoned its 'old standard of review giving deference to agency interpretations of statutes' and established that we now will conduct a de novo review without giving such deference." *HWCC-Tunica, Inc. v. Miss. Dep't of Revenue*, 296 So. 3d 668, 673 (Miss. 2020) (quoting *King v. Miss. Mil. Dep't*, 245 So. 3d 404, 407-08 (Miss. 2018). Further, "[i]t is a well-established rule that a taxing statute must be strictly construed against the taxing power and in favor of the taxpayer, and all doubts as to whether or not a tax has been imposed must be resolved in favor of the taxpayer." *State v. Johnson*, 238 Miss. 211, 222, 118 So. 2d 308, 313 (1960).

### Discussion

¶13. This appeal comes down to one question: What is the nature of EKB's business?

¶14. According to EKB, it is in the business of providing wedding photography *services*. Its clients enter into multi-thousand-dollar contracts to engage the services of Burton, an experienced photographer. These clients pay to have their big days captured through still digital images, which are incidentally conveyed by a jump drive, DVD, or tablet, for which EKB pays sales tax. Burton also assists in engaging a third-party vendor to construct a coffee-table book of the images his clients select, for which Burton also paid sales tax.

¶15. According to the MDOR, however, the EKB wedding contracts are for the sale of tangible personal property. In the MDOR's view, EKB's customers are not engaging Burton's services; they are buying photographs conveyed in the *tangible* forms of a jump drive or DVD and sometimes coffee-table books and large linen prints.

¶16. The chancellor agreed with EKB, and so does this Court. After de novo review, we also conclude EKB is a photography business not subject to tax.

## I. Tangible Personal Property

¶17. Under Mississippi Code Section 27-65-17(1)(a), the Legislature has levied a 7 percent tax on the gross retail sales of "every person engaging or continuing within this state in the business of selling any tangible personal property whatsoever . . . ."[2] According to the MDOR, photographs, DVDs, diskettes, flash drives, jump drives, and coffee-table books are

---

[2] Tangible personal property is defined as "personal property perceptible to the human senses or by chemical analysis, as opposed to real property or intangibles." Miss. Code Ann. § 27-67-3(i) (Supp. 2021). Expressly included in this definition is "*printed, mimeographed, multigraphed matter, or material reproduced in any other manner*, and books, catalogs, manuals, publications or similar documents covering the services of collecting, compiling or analyzing information of any kind or nature." *Id.* (emphasis added). But "reports representing the work of persons such as lawyers, accountants, engineers and similar professionals shall not be included." *Id.*

5

all tangible personal property, making the entire contract price subject to tax under Section 27-65-17(1)(a).

¶18.   The MDOR contends there is no difference between customers receiving one thousand physically printed photos and customers receiving one thousand digital photos contained on a jump drive or disk. "[T]he end result is the same," the MDOR argues, because the "customers receive their photos in a tangible form." As support, the MDOR cites an unreported case from the Minnesota Tax Court. *Bakewell v. Comm'r of Revenue*, No. 7925 R, 2009 WL 427029 (Minn. Tax Ct. Feb. 19, 2009). Like this case, *Bakewell* involved a wedding photographer who no longer used film but instead created digital images transferred to the client by DVD. *Id.* at \*2. The tax court concluded that the clients were not just paying for the digital images; they were also "paying for the particular portable and retrievable 'form' of the information"—i.e., the DVD. *Id.* at \*6 (quoting *Dynamic Digit. Design, Inc. v. Comm'r of Revenue*, No. 7380-R, 2004 WL 97645, at \*4 (Minn. Tax Ct. Jan. 14, 2004)). Thus, the tax court concluded the DVDs were tangible personal property. *Id.* The story would have been different, the tax court noted, had the photographer simply emailed the images or used some other electronic means of transfer. *Id.* at \*6. Then, the digital images would not been subject to tax. *Id.* at \*6.

¶19.   But the *Bakewell* approach, which the MDOR urges, literally places form over substance. It makes an arbitrary distinction between digital images transferred from Burton's computer to the client's computer by disk, which *Bakewell* ruled was taxable, and digital images transferred from Burton's computer to the client's computer by electronic mail, which

6

under *Bakewell* would not be taxable. In reality, EKB's clients did not pay EKB thousands of dollars for a jump drive or DVD that they could purchase at an office-supply store for a few dollars. Clients paid EKB thousands of dollars for Burton to take digital photographs of their wedding. And the undisputed facts show EKB's customers did not receive Burton's photographs in tangible form—they did not receive printed photographs, negatives, or film. Instead, they receive purely digital images. The tangible drive or disk is *incidental* to the nontaxable photography service being provided, much like the paper on which a lawyer prints a will, which is not subject to sales tax. *See* Miss. Code Ann. § 27-65-3(i); *see also State Dep't of Revenue v. Omni Studio, LLC*, 222 So. 3d 367, 375 (Ala. Civ. App. 2016) (affirming trial court's ruling that transfer of photos was incidental to nontaxable creative service of photography). Moreover, Burton testified that he paid sales tax on the drives, disks, and tablets when he purchased them. He also paid sales tax when he engaged a third-party business to construct a coffee-table book using the photos his clients selected.

¶20.    Importantly, the sale of still digital images is not subject to sales tax. In 2009, the Legislature began taxing the sale of "specified digital products." H.B. 1461, Reg. Sess., 2009 Miss Laws ch. 332, § 1 (codified as Miss. Code Ann. § 27-65-26). But conspicuously absent from the definition of "specified digital products" is still digital images. Miss. Code Ann. § 27-65-26(3)(a). Instead, only the transfer of "digital audio-visual works, digital audio works[,] and digital books" are subject to tax.[3] *Id.* Construing Section 27-65-26 and Section

---

[3] Under Section 27-65-26(3)(b), "'Digital audio-visual works' means a series of related images which, when shown in succession, impart an impression of motion, together with accompanying sounds, if any."

27-65-17 together, it is obvious the Legislature has recognized the difference between tangible personal property and digital products.[4] *See also* Miss. Code Ann. § 27-67-3(e) ("Every closed transaction by which title to, or possession of, tangible personal property or specified digital products passes shall constitute a taxable event."). And while the Legislature has determined that the transfer of title or possession of certain specified digital products is a taxable event, the Legislature has not—through either Section 27-65-26 or Section 27-65-17—subjected to tax the transfer of title of digital still photographs.

¶21. This is what distinguishes this case from the Mississippi cases on which the MDOR further relies. *United Roofing & Constr. of MS, Inc. v. Miss. Dep't of Revenue*, 319 So. 3d 1164 (Miss. Ct. App. 2020); *Miss. State Tax Comm'n v. Hinton*, 218 So. 2d 740 (Miss. 1969). Both of those cases involved the sale of housing material that was clearly subject to sales tax.[5] *United Roofing*, 319 So. 3d at 1171 (roofing material); *Hinton*, 218 So. 2d at 741 (tiles). In *Hinton*, this Court looked to the statutory definition of "gross proceeds of retail sales," which expressly "includ[ed] installation charges." *Hinton*, 218 So. 2d at 742 (quoting Miss. Code (1942) § 10104(7) (Supp. 1966) (statutory predecessor of Miss. Code Ann. § 27-65-3(h) (Rev. 2017))). Based on this express language, this Court in *Hinton* concluded that the Legislature intended that the entire amount collected on a tile-installation job was subject to sales tax. *Id.* In *United Roofing*, the Court of Appeals applied *Hinton*'s reasoning to

---

[4] We note that the Legislature has expressly included "computer software programs" in the definition of "tangible personal property." Miss. Code Ann. § 27-67-3(i) (Rev. 2017).

[5] Section 27-65-3(j) expressly defines "tangible personal property" as "property sold on an installed basis which may become a part of real or personal property."

conclude that the entire amount collected for installing a roof was likewise subject to sales tax. *United Roofing*, 319 So. 3d at 1171-72. The MDOR analogizes to *Hinton* and *United Roofing*, arguing the entire amount collected under EKB's contracts is subject to sales tax, including Burton's photography services. In this case, there was no sale of tangible personal property or specified digital products subject to tax—let alone installation of taxable property. So *Hinton* is not analogous and does not authorize the MDOR to collect sales tax on EKB's contracts. Without taxable sales, there can be no sales tax assessment.

## II.     Photography

¶22.    In fact, EKB did not engage in any taxable activity.

¶23.    In Mississippi, nonsales business activities are not subject to tax unless expressly enumerated in Mississippi Code Section 27-65-23. Photography is not among the listed business services. Interestingly, the Legislature added photography to the list of taxable services in 1954. S.B. 1555, Reg. Sess., 1954 Miss. Laws ch. 383, § 1. But the following year, in 1955, the Legislature did an about-face and removed photography, instead taxing only the activities of film development and photo finishing. H.B. 17, Extraordinary Sess., 1955 Miss. Laws ch. 109, § 12. Thus, it is clear the Legislature has not authorized the MDOR to assess taxes on photography. So EKB's wedding photography services are not subject to tax.

¶24.    As an alternative argument, the MDOR argues EKB engaged in the taxable business activity of "photo finishing" when Burton touched up the digital images he captured before transferring them to his clients. But even the online-dictionary definition the MDOR

9

provides of "photo finishing" defines the activity as "[t]he commercial development and printing of film."[6] And Burton does not even use—let alone develop and print—film.

¶25. Citing a website that amasses user-provided word definitions,[7] the MDOR argues the meaning of "photofinishing" has evolved to include the touching up of digital photos, a process often called "Photoshopping," after the eponymous digital editing software.[8] But the Legislature has given no indication that digital editing services are to be included in "photo finishing." Again, the Legislature first included the service of photo finishing as a taxable business activity in 1955—decades before the invention of the digital camera.[9] And while the Legislature has amended the tax code elsewhere to reflect the digital revolution,[10] it has not amended Section 27-65-23 to specifically include the service of editing purely digital images. Thus, the MDOR cannot rely on Section 27-65-23 as an alternative means to tax EKB.

## III. Duty to Keep Records

---

[6] https://www.lexico.com/en/definition/photofinishing (last visited July 26, 2022).

[7] https://dictionary.university.

[8] *See* dictionary.com/browse/photoshop (last visited October 4, 2022) (defining "Photoshop" as "to digitally alter (a photograph or other graphic) using image-editing software such as Photoshop").

[9] As defined in the 1950s, when photo finishing was added to the list of taxable business activities, "photo-finishing" was "the act or process of developing and printing from negatives." *Photo-finishing*, Webster's New International Dictionary (2d ed. 1952).

[10] *E.g.*, Miss. Code Ann. § 27-65-26(1) (Rev. 2017) (establishing a 7 percent tax on businesses selling "specified digital products"); Miss. Code Ann. § 27-67-3(i) (expressly including computer software programs in the definition of "tangible personal property).

¶26. Similarly, the MDOR's argument that its tax assessment is prima facie correct fails. The MDOR asserts that EKB had a duty under Mississippi Code Section 27-65-43 (Rev. 2017) to maintain proper records to allow the MDOR to determine the correct amount of tax due. And because EKB failed in this duty, Mississippi Code Section 27-65-37(1) (Rev. 2017) establishes that the MDOR's tax assessment is prima facie correct. But under its plain terms, the record-keeping duty of Section 27-65-43 applies only to a "person taxable under this chapter . . . ." As discussed, the MDOR has failed to establish that EKB engaged in an activity taxable under Chapter 65 of Title 27. Thus, the chancellor did not err by not accepting the MDOR's tax assessment as prima facie correct. Instead, after a de novo review, the chancellor concluded the MDOR exceeded its statutory authority by assessing EKB sales tax.

## Conclusion

¶27. Because EKB did not engage in the business of selling tangible personal property or specified digital products, we affirm the order vacating the sales tax assessment against EKB.

¶28. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. COLEMAN, J., NOT PARTICIPATING.**

11