STONE v. W. G. NELSON EXPLORATION CO.

Division A. Mar. 19, 1951.

No. 37856 (51 So. (2d) 279)

J. H. Sumrall, for appellant.

Wm. Harold Cox, for appellee.

Gwinnup, Heidelberg & Fontaine, Amici Curiae.

## McGehee, C. J.

This is a suit brought by the appellee, W. G. Nelson Exploration Company, to recover the sum of $1,185.69 paid to the appellant A. H. Stone, Chairman of the State Tax Commission, in taxes levied and collected under Section 10110, Code 1942, as a tax "Upon every person

engaging or continuing in this state in the business of contracting for a fixed price, commission, fee or wage, to . . . drill . . . oil wells . . . when the gross amount of the total contract price or the gross amount received as compensation exceeds the sum of $3,000.00, . . .." The tax sought to be levied by this statute is equal to one per cent of the total contract price, or the compensation received.

The suit is brought under the authority of Section 10122, Code 1942, which provides among other things that: "Any person improperly charged with any tax and required to pay the same, may recover the amount paid, together with interest, in any proper action or suit against the Commissioner, and the circuit court of the county in which the taxpayer resides or is located shall have original jurisdiction of any action to recover any tax improperly collected." ██ ██ It is not necessary that the tax sought to be recovered shall have been paid under protest.

The cause was tried before the circuit judge without the intervention of a jury, and a judgment was rendered in favor of the taxpayer for the amount sued for, there being no dispute as to the amount of refund due in the event the taxpayer was improperly charged with the tax.

The proof discloses that the appellee is engaged in exploring for oil and gas by drilling wells to that end with its own equipment and personnel on leases owned by it and wells for other persons. In all instances where it drilled the wells for a fixed contract price for the other contracting party, to whom the well was to belong as the owner of the land or the holder of a lease, the taxes levied and assessed by this statute were admittedly fully paid. In such case the contract price or the compensation to be received for drilling the well was paid by the other contracting party to the appellee and without regard to whether the well when completed under the contract should prove to be a producing well or a dry hole; and the contract price or compensation to be re-

ceived was therefore computed on the basis of a full remuneration to the driller for the services rendered. Therefore in such cases the appellee would be liable for the tax of one per cent on the contract price or compensation received, and no refund is sought on account of any tax paid under such circumstances.

The claim for refund here involved is shown to consist of a tax paid by the appellee on the amount of "dry hole contributions" received from the owners of other oil and gas leases adjacent to or in the area of the lands on which the four wells in question were drilled by the appellee and where it was the owner of the lease in its entirety in two instances and the owner of a one-half interest therein in the other two. The appellee drilled the Barnhill No. 1 well with its own equipment and personnel at an expense to itself of $45,000, and for the cost of which it was reimbursed by other leaseholders in the area in the sum of $25,700; it likewise drilled the Hinds No. 1 well at a cost of $130,000 and was reimbursed in like manner in the sum of $50,000; and the Ridgeway No. 1 well at a cost of $65,000 and was likewise reimbursed to the extent of $44,000; and the Hurley No. 1 well at a cost of $103,000 and for the cost of which it was likewise reimbursed to the extent of $67,500. All of these wells were drilled in Wayne County and resulted in no production of oil.

The above mentioned contributions were made pursuant to letters to the appellee written by the respective contributors in advance of the drilling of these dry holes, and which contained language typical of that set forth below, to wit: "If you will commence on or before thirty days from this date the drilling of a well at the location above described and complete same within a reasonable time, not later than 90 days from the date of commencement and said well is drilled to a depth sufficient to test thoroughly the Basal Tuscaloosa horizon at an estimated depth of 8000 feet . . . and same does not produce oil or gas in paying quantities and is then abandoned

and if you have fully complied with all other provisions of this letter, we will pay you the sum of $17,500.00."

In other words, it was understood that the appellee was not to receive any part of the proposed contributions for drilling a well, where he held the oil and gas lease unless the operation should result in a dry hole. The proposed contributions were therefore in the nature of an indemnity and for the purpose of partially indemnifying the driller against the loss that he would inevitably sustain by reason of drilling a dry hole as a test well. The holders of oil and gas leases on adjacent lands, or on lands in that area, were willing to share a part of the loss in case no oil was found, because they were interested in knowing whether their own leases were in proven oil territory and in gaining other information that a test well would afford. If the appellee had been successful in drilling a producing well on its own leases in the foregoing instances the authors of these letters would have been under no obligation to pay any part of the cost to the appellee Exploration Company; it would be compensated in such event for its effort by becoming the owner of a producing oil well on its own lease.

Therefore, instead of receiving a fixed contract price or compensation for drilling an *oil well,* these contributions were not payable except where the driller failed to drill an oil well, and as heretofore stated they were to be made in the nature of an indemnity to protect the driller for a part of the loss that he would inevitably sustain in drilling a dry hole.

The statute relied upon as imposing the tax in question, Section 10110, Code of 1942, also contains the following provision: "And to the end that the state may receive the tax due in every instance, any person entering into any contract, as defined in this section, where the total contract price, or the compensation received amounts to more than ten thousand dollars ($10,000.00), shall, before entering into the performance of such contract,

execute and file with the chairman of the state tax commission a good and valid bond in a surety company authorized to do business in this state, or with sufficient sureties to be approved by the commissioner, conditioned that all taxes which may accrue to the state of Mississippi under this section on account of the execution of such contract will be paid when due, and the execution and filing of said bond shall be a condition precedent to commencing work on any contract in the state of Mississippi.''

The contractor may also be enjoined by the attorney general from performing the work contemplated until he has first complied with the provisions of this statute. Therefore, we think it is evident that the legislature intended that the provisions of this statute should apply only to one engaged in the business of contracting to drill the well for the other contracting party at a fixed price, commission, fee or wage without regard to whether or not the drilling should result in a producing well; that it was never intended that the statute should apply to one who drills for oil on his own land or that on which he holds an oil lease, or where the driller owns an interest in a lease and the dry hole contributions are made to partially indemnify him against the enormous loss that he knows in advance that he will sustain in the event the drilling results in a dry hole, which is a condition precedent to any obligation on the part of the owners of adjoining lands or leases to pay the promised contributions.

It was held in the case of M. L. Virden Lbr. Co. v. Stone, 203 Miss. 251, 33 So. (2d) 841, 843, that: ''It is familiar learning that doubts in tax statutes should be resolved in favor of the taxpayer.'' This principle is so well settled in this state in regard to any statute imposing an excise tax that no further citation of authority is deemed necessary.

To contract to do a particular work for a fixed price, commission, fee or wage would seem to imply that the one agreeing to perform the work is to perform it for

another person, and that if the work is to consist of building, erecting, constructing or repairing a structure, or the drilling of a well, then the finished product is to belong to the other contracting party who pays the fixed price, commission, fee or wage, unless, of course, the one doing the work is acting in the capacity of a subcontractor.

In the case of Coats, City Tax Collector, v. L. B. Price Mercantile Co., 201 Miss. 871, 30 So. (2d) 75, the statute imposed a tax upon each person operating a warehouse for the purpose of storing goods, etc. Appellee operated a warehouse for the purpose of storing its own goods but did not store goods for others for hire or profit. The court said that it was not liable for this tax under the familiar rule of strict construction.

One who contracts to do a specified work of building, erecting, constructing or repairing a structure, or drilling an oil well for another enters on the performance of the work under an agreement that he shall receive for his service what he conceives to be a fair remuneration for the service to be performed. It is in that sense that one engages or continues "in the business of contracting for a fixed price, commission, fee or wage, to build, erect, construct, repair, . . . drill". One does not contract with himself or with others to build, erect, construct or repair his own house or to drill his own oil well for a fixed price, commission, fee or wage. The contributions here involved and on which the tax was collected were not received by the driller at a fixed price, commission, fee or wage and they were not intended as compensation for the services to be rendered by the driller in drilling the wells in question, but they were merely promised in advance and paid to the driller after his work had resulted in failure to produce an oil well and merely to partially reimburse or indemnify the driller against the enormous cost that was to be incurred. There was no way for the driller to make a gain or profit in drilling a well that would render the authors of the letters liable for their

promised contributions. The driller must of necessity get a dry hole at a cost far in excess of the contributions before they would become payable. We do not think it was intended to levy a tax on such an undertaking.

It is not intended by this decision to open up any avenue of escape from taxes in favor of any driller of oil wells for third parties for a fixed price, commission, fee or wage to be paid without regard to whether or not an oil well is produced. We merely hold that where a driller in reality and in good faith acquires a lease as owner in whole or in part and drills a test well for oil thereon and receives contributions from others in the area to indemnify him against loss, under the facts and circumstances of the instant case, the driller is not liable for the tax on the contributions so received. There is no proof in the record that the leases where the four wells in question were drilled had been acquired by the appellee as a subterfuge to evade the payment of taxes. We limit this decision to the facts of this particular case in affirming the judgment appealed from.

Affirmed.