986 So.2d 1052 (2008)
Joseph BLOUNT, In His Official Capacity as Chairman and Commissioner of The Mississippi State Tax Commission, Appellant,
v.
ECO RESOURCES, INC., Appellee.
No. 2006-CC-00673-COA.
Court of Appeals of Mississippi.
April 22, 2008.
*1053 Dave Scott, attorney for appellant.
Luther T. Munford, Jackson, C. Delbert Hosemann, Jr., R. Gregg Mayer, attorneys for appellee.
EN BANC.
*1054 ROBERTS, J., for The Court.
¶ 1. The Appellant's motion for rehearing is granted, and this Court's original opinion is withdrawn, with this opinion substituted in lieu thereof. ECO Resources, Inc. (ECO), filed an action for refund against Joseph Blount, in his official capacity as the chairman and commissioner of the Mississippi State Tax (Commission) in the Chancery Court of Harrison County. The chancellor held that ECO was exempt from the contractor's tax and ordered the Commission to refund $394,972 to ECO and to pay interest. The Commissioner appeals and argues that the chancellor erred in classifying ECO's work as repairs to personal property. We affirm.

FACTS
¶ 2. ECO is a management company that operates water and sewer systems for municipalities. ECO had management contracts with five Mississippi cities: Biloxi, D'Iberville, Horn Lake, Olive Branch, and Southaven. Essentially, ECO was hired to run the water and sewer utilities for these cities. In exchange for a flat contract fee, ECO supplied the professional operations, management and maintenance services for the utilities. This included all supervision, labor, transportation, tools, equipment, staffing, billing and collecting, customer service, ensuring compliance with environmental and health agencies, and minor repairs. Minor repairs were defined as those capped at $2,000 each.
¶ 3. If there was a repair that would cost over $2,000, the respective city had three options: (1) it could make the repairs itself through its public works; (2) bid the job out to a contractor, including ECO; or (3) it could declare an emergency. If the major repair was bid out to ECO, it would be handled under a separate contract. ECO designated any such separate major repair contract as "extra-billable" repair hours, which it would bill to the city over and above the flat contract fee.
¶ 4. Tax on the income stream from the extra-billable repairs is not at issue in this suit. Only the minor repairs encompassed in the flat contract fee are at issue.
¶ 5. In October 1999, the Commission audited ECO. The auditor determined that ECO owed a contractor's tax on these five contracts for the period from July 1, 1996, through August 31, 1999. A contractor's tax is a 3.5% sales tax placed on money earned by a contractor for any and all repairs he or she makes to real property.
¶ 6. In her review, the auditor went solely by the job titles of ECO's employees. She opined that 70% of the employees had "construction related" job titles. Besides hourly employees, she included managers because she believed they would have some "construction related" duties. She made no attempt to verify her theory with ECO or to determine what ECO's duties were under its contracts. Therefore, she concluded that 70% of the fees ECO received on these contracts were subject to a 3.5% contractor's tax.
¶ 7. ECO objected and provided the auditor with documents detailing the work performed by its employees. The auditor then determined that 86% of the contract fees were taxable. She included in this calculation the hours spent by hourly employees on repairs and all inspections, because "inspections could lead to repairs." Finally she included other various non-repair[1] activities, like dye tests, marking *1055 utility lines, etc. She also included 100% of the work done by ECO's managers. However, she maintained that she would stick to her original assessment of 70% since it was lower. The total amount assessed in taxes by the auditor was $407,974, including penalty and interest, which was finally assessed on June 5, 2000.
¶ 8. ECO appealed to the Commission's Board of Review (Board). The Board affirmed the auditor's assessment on November 1, 2000.
¶ 9. ECO then appealed to the Commission. After a hearing, the Commission on October 3, 2001, reduced the assessment to $394,972. The Commission used the same methodology as the auditor, but it excluded fees: (1) for inspections that did not in fact lead to repairs, (2) for 41% of all work done by the managers, and (3) for repairs to portions of the water and sewer system that were considered residential property. Still included were other non-repair activities.
¶ 10. ECO paid the tax and filed an action for a refund in the chancery court, claiming it was exempt from the contractor's tax because all repairs it performed were to portions of the systems that were personal property. The chancellor found that all repairs made by ECO were to personal property. The chancellor held that ECO was exempt from the contractor's tax and ordered the Commission to refund $394,972 along with interest to ECO. It is from this judgment the Commissioner now appeals.

STANDARD OF REVIEW
¶ 11. An action for refund is described in Mississippi Code Annotated section 27-65-47 (Rev.2000):[2]
Any person improperly charged with any [sales] tax . . . and required to pay the same, may recover the amount paid together with interest, in any proper action or suit against the commissioner for the amount paid into the state treasury. . . and the chancery court . . . shall have original jurisdiction of any action to recover any tax improperly collected by the commissioner and paid into any fund in the state treasury. . . . .
. . . .
The chancery court, or the supreme court of Mississippi on appeal to it, may, if it be of the opinion from all the evidence that the assessment is incorrect or in part invalid, determine the amount of tax due and shall decide all questions both as to legality and the amount of the tax and enter judgment therefor[e].
¶ 12. We will not defer to the Commission's interpretation of a taxation statute "when the interpretation is repugnant to the plain meaning thereof." Miss. State Tax Comm'n v. Oscar E. Austin Trust, 719 So.2d 1172, 1173(¶ 7) (Miss. 1998). "Further, this Court reviews the chancellor's findings of fact under the manifest error/substantial evidence rule." Id. We review, "the application of the law de novo[,] and the scope of review is plenary." Id. (citing Miss. State Tax Comm'n v. Medical Devices, Inc., 624 So.2d 987, 989 (Miss.1993)). "[D]oubts in tax statutes should be resolved in favor of the taxpayer." Stone v. W.G. Nelson Exploration Co., 211 Miss. 199, 205, 51 So.2d 279, 282 (1951) (quoting M.L. Virden Lbr. Co. v. Stone, 203 Miss. 251, 260, 33 So.2d 841, 843 (1948)). Whether personal property retains its character or is transformed into *1056 real property is a question of fact. Bondafoam, Inc. v. Cook Constr. Co., 529 So.2d 655, 658 (Miss.1988).

ANALYSIS

I. Does the personal property exemption apply to repairs of water and sewer systems?
¶ 13. The Commissioner argues that the personal property exemption from the contractor's tax does not apply to repairs of water and sewer systems. The chancellor held that the statute and the Commission's internal rules exempt repairs to component parts of water and sewer systems that may be classified as personal property.
¶ 14. The contractor's tax is codified at Mississippi Code Annotated section 27-65-21(1)(a)(i) (Rev.2005), which provides in part:
Upon every person engaging . . . in this state in the business of contracting or performing a contract or engaging in any of the activities, or similar activities, listed below for a price . . . [or] fee . . ., there is hereby levied . . . a tax equal to three and one-half percent . . . of the total contract price or compensation received. . . from . . . repairing . . . any. . . sewer, irrigation or water system,. . . when the compensation exceeds Ten Thousand Dollars. . . . Such activities shall not include[3] . . . repairing . . . property which retains its identity as personal property. The tax imposed in this section is levied upon the prime contractor and shall be paid by him.
See also Miss. State Tax Comm'n Regulation IV-10-01-306 (2005) (excluding "work upon personal property"), Comm'n Rule 41. In other words, any fee over $10,000, earned by ECO through repair of sewer and water systems is taxed at 3.5%, so long as the repair is to real property. This is the plain meaning of the statute. Repairs to water and sewer systems are listed as a taxable "activity." Immediately following this sentence, the next one begins, "Such activities," i.e., those just listed. Therefore, the personal property exemption does apply to repairs of water and sewer systems.
¶ 15. Despite the plain language, the Commissioner first argues that because repairs to water and sewer systems are specifically listed as taxable activities, they cannot be subject to the personal property exemption. By this same reasoning, none of the taxable activities listed would be subject to the personal property exemption. This would make the exemption a complete nullity if we were to hold that "such activities" did not include the activities listed. Thus, we reject this argument.
¶ 16. The Commissioner next argues that it does not make sense to break the water and sewer system up into personal and real property bits and pieces for taxation purposes. First, this is the prerogative of the Mississippi Legislature. Second, the Commission recognizes, as it must, that the residential property exemption divides the systems up into residential and non-residential pieces for taxation purposes. Miss.Code Ann. § 27-65-21(1)(b)(i) (Rev.2005). Specifically, this exemption excludes any compensation received from, inter alia, repairs to any improvement or structure which is used primarily in connection with a residence. Id. As Commission witness Meg Bartlett testified, the Commission's practice is to exempt repairs made from the water meter to the residence *1057 as residential. All other repairs are classified as non-residential. There is no reason why the personal property exemption cannot likewise apply. Accordingly, we find that this issue has no merit.

II. Did the chancellor err in finding ECO's repairs were to personal property?
¶ 17. In the alternative, the Commissioner argues that water and sewer systems are real property. The chancellor relied on the Commission's definition of personal property and found that the repairs by ECO fit this definition.
¶ 18. "The term `personal property,' when used in any statute, shall include goods, chattels, effects. . . ." Miss.Code Ann. § 1-3-41 (Rev.2005). According to the Commission's rules and regulations:
For personal property to be considered real property, it must be permanently attached to real property. To be considered permanently attached, one or more of the following criteria must be met:
1. The property or equipment must be attached to building walls, floors, and/or ceiling in such way as to require design or structural alterations to the real property to which it is being attached, or
2. The property could not be removed intact or its removal would result in the alteration or destruction of the structure or property, or
3. The property must become an independent structure, itself (real property),
4. And the property must lose its identity as personal property.
Miss. State Tax Comm'n Regulation IV-10-01-502 (2005), Comm'n Rule 41. This definition is in accord with Mississippi common law on the subject. See, e.g., Frederick v. Smith, 147 Miss. 437, 443-44, 111 So. 847, 848 (1927); Check Cashers Express, Inc. v. Crowell, 950 So.2d 1035, 1040-41 (¶¶ 11-12) (Miss.Ct.App.2007).
¶ 19. At trial, the Commission's witnesses admitted that their practice was to apply the Rule 41 test to the personal property exemption. They further admitted they did not even consider the issue in ECO's case. In fact, Commission auditor Dorothy Cooper testified that she did not consider the individual water pumps as personal property because she could not pick one up and move it. Unfortunately, a subjective "pick it up and move it" test is not the law, nor is it the Commission's prior practice. We hold the chancellor was correct to apply the Rule 41 test for personalty and realty.
¶ 20. We now examine whether the chancellor's finding that the repairs were to personal property is supported by substantial credible evidence. The chancellor found:
that the services taxed by STC as being subject to the contractor's tax were performed on personal property. The evidence, including the testimony of ECO's expert witness, Ralph Ellison, describing the components and makeup of typical water and sewer systems, as well as the Court's inspection of a sewer lift station and a water well site (both a part of the Biloxi system (Exhibit 16)) establish that the components on which ECO performed its services retained their identity as personalty. The components consist generally of pumps, electrical motors, floats, control panels, chlorination devices. None of these devices are permanently attached to real property. In fact, they are easily removed for repair or replacement without causing any alteration or damage to the structure on which they are mounted. Once removed, they can be used at different locations.

*1058 The Court accepts that the underground water and sewer pipes lose their identity as personal property, but finds that none of the work which ECO performed under the contracts and to which STC applies the contractor's tax was performed on the underground pipes. None of the activities described in Exhibit 34 or other evidence can reasonably be interpreted as work on the underground pipes.
¶ 21. The minor repairs in question were generally restricted to the water wells and lift stations. A water well is a facility within a water system that produces ground water, which is treated and distributed for potable use. A lift station is found in the sewer system. It is a facility through which sewage is lifted and moved from a lower pipe to a higher pipe. The testimony was that within these facilities, the repairs were to motors, water pumps, and electrical panels.
¶ 22. On pages four through five of its reply brief, the Commission acknowledges that pumps are considered personal property, and therefore, they are not captured under the contractor's tax. At oral argument, the Commission argued that it meant that only "mobile" pumps were personal property. This qualification does not appear in its brief, nor does this distinction appear in the record. Nevertheless, as the following suggests, there was undisputed testimony that the pumps were personal property.
¶ 23. John Jeffcoat was ECO's district manager for the southern district of Mississippi. He testified that a motor is bolted to a water pump via a pump attachment. Further he testified, "And that will go in and, either through an impeller or a shaft-driven pump, it will take the water and transfer it from there to the reservoir where it's going to be either an elevated tank or an above-ground tank." The motors and pumps are approximately four-feet tall, two-feet in diameter, and weigh between 250 to 300 pounds. Jeffcoat said the motors are typically and commonly moved from their locations. They can be reused at different locations for the same purpose.
¶ 24. Jeffcoat testified the water-well pumps are "affixed to a base," above ground. The lift station pumps are submersible and attached with two stainless steel guide rods, which "by gravity will take them down into the water. . . . And, of course, all of the wires and feeds that have to go up are guided back up to where the control panel is." They are not attached to the bottom of the well, but are held in place by gravity. He maintained that pumps do not require a design or structural alteration to the water well or lift station for installation. The pumps can be removed intact, and their removal does not result in the alteration or destruction of the wells.
¶ 25. Jeffcoat also described the electrical panels. He testified that the panels are used at each lift station and are mounted on "a metered power pole provided from Mississippi Power." He said the panels were smaller than the size of a table, and "[e]ach one of them is going to be almost identical and have interchangeable parts." He testified it did not require a design or structural alteration to the pole to which it was attached. He also testified that they could be removed intact, and their removal would not result in the alteration or destruction of the pole. He also testified that the component parts of the electrical panels (circuit breakers, fuses, etc.) were interchangeable and could easily be removed and replaced.
¶ 26. ECO's expert witness, Ralph Arnold Ellison, Jr., testified that the pumps and electrical components are not permanently attached to the locations where they *1059 are found. He testified they can typically be removed intact and without alteration or destruction of the structure or real property. He testified that when these parts are installed, they do not require design or structural alterations to the real property. He maintained that the tendency now is for utilities to standardize their pump stations so that the pumps and electrical components can be interchangeable.
¶ 27. In addition to the testimony, the chancellor had the benefit of viewing the property in question. The chancellor was accompanied by the parties to inspect a sample water well and lift station agreed upon by the parties.
¶ 28. Exhibit 34 listed the other items that ECO repaired. These items included chlorination devices, floats, fence boards, etc. The only evidence as to whether these items were personal property was the chancellor's on-site examination. The Commissioner did not provide any evidence that these items were real property and thus failed to preserve the record. There is nothing to challenge the chancellor's findings of his on-site inspection. We find the chancellor's determination of realty versus personalty is supported by substantial credible evidence.
¶ 29. Additionally, the Commission argues that ECO admitted that some of its repairs were to real property. In particular, it points to a letter from ECO's counsel to auditor Cooper. In this letter, ECO's attorney challenged the auditor's initial finding that 70% of the work ECO performed was repair work. Instead he submitted that, "Analysis of this information shows that only 10.3% of the total contract fee is attributable to repair and construction services . . . thus only 10.3% of total contract revenues should be subject to the contractor's tax." As this statement makes clear, ECO's attorney represented that 10.3 % represented all repairs. He did not admit that 10.3% of the work was to real property. In fact, he did not differentiate between residential versus non-residential, nor realty versus personalty.
¶ 30. At trial, Ellison likewise testified that the total work for all repairs was far less than the 59% taxed by the Commission. He concluded that 11.87% of ECO's work was for all repairs performed by ECO. He testified 4.01% was residential, and therefore exempt under the residential property exemption. He also stated that only 7.86% of the work performed by ECO was repairs to non-residential property, without a distinction between which of that was real or personal.
¶ 31. As the evidence makes clear, only 0.56% of the work performed by ECO was repair to real property.

CONCLUSION
¶ 32. Consequently, we affirm the chancellor. The Commissioner arbitrarily and capriciously assessed the contractor's tax against ECO without regard to whether the work done was actually a repair in the first place or whether ECO qualified for the personal property exemption in the second place. There is substantial credible evidence to support the chancellor's findings that the underground pipes were real property, and all other repairs were to personal property.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] "`Repair' . . . means the restoring of property in some measure to its original condition, which may involve the use of either personal property or labor or both, but, for the purposes of this chapter, the total charge for the service shall constitute gross income taxable in the class in which it falls." Miss.Code Ann. § 27-65-11(i) (Rev.2005).
[2] This statute was repealed effective July 1, 2005, and recodified at Title 27, chapter 77 (Rev.2005). 2005 Miss. Laws ch. 499, § 36; Miss.Code Ann. §§ 27-77-1-15 (Supp.2007).
[3] The statute provides further exemptions not at issue in this suit. Miss.Code Ann. § 27-65-21(1)(a)(ii) and (b) (Rev.2005).